WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

TOK AIR SERVICE, LLC,                    )
                                         )
                        Plaintiff,       )
                                         )
        vs.                              )
                                         )
DEB HAALAND, in her official capacity as )
Secretary of the United States Department of )
the Interior, et al.,                    )
                                         )          No. 4:21-cv-0012-HRH
                        Defendants.      )
_____ )

O R D E R

Motion for Temporary Restraining Order[1]

Plaintiff moves for a temporary restraining order followed by a preliminary injunction

requiring the National Park Service "to rescind the denial/suspension of" its Big Game

Transport Commercial Use Authorization for 2021 and to temporarily grant it a Big Game

Transport Commercial Use Authorization "under the same conditions as 2020. . . ."[2]

Defendants have filed an opposition to the motion,[3] to which plaintiff has replied.[4]   Oral

_____

[1]Docket No. 17.

[2]Amended Complaint for Injunctive Relief at 2, ¶ 7; 10, ¶ B, Docket No. 16.

[3]Docket No. 21.

[4]Docket No. 23.

ORDER – Motion for Temporary Restraining Order                              -1-

argument was not requested and is not deemed necessary. In addition, the court does not deem an evidentiary hearing necessary.

Background

Plaintiff is Tok Air Service, LLC. The sole member of Tok Air is Zack Knaebel.[5] Defendants are Deb Haaland, the Secretary of the United States Department of the Interior; Shawn Benge, Director of the National Park Service; Jeff Mow, Alaska Regional Director of the National Park Service; and Ben Bobowski, the Superintendent of the Wrangell-St. Elias National Park. Defendants are all sued in their official capacities.

Section 101925 of Title 54 of the United States Code provides that "the Secretary [of Interior], on request, may authorize a private person, corporation, or other entity to provide services to visitors to [National Park] System units through a commercial use authorization ['CUA']." CUAs may only be issued for the provision of services that

> (A) will have minimal impact on resources and values of a System unit; and
>
> (B) are consistent with the purpose for which the System unit was established and with all applicable management plans and Service policies and regulations.

54 U.S. § 101925(b)(1). The term of a CUA may not exceed two years, and the statute prohibits any "preferential right of renewal. . . ." 54 U.S.C. § 101925(f).

---

[5]Amended Complaint for Injunctive Relief at 1, ¶ 2, Docket No. 16.

The Secretary has delegated her authority regarding CUAs to National Park managers.[6]  Policy 700-001 "provides guidance to Alaska national park managers when considering whether to suspend, restrict or revoke a Commercial Use Authorization (CUA) and when considering when to approve an application for a future CUA."[7]  The

> policy is intended to provide general guidance regarding the actions to be taken in the event of a permittee violation.  The Superintendent may take a different action than that called for in this policy at his/her discretion.  The Superintendent retains the authority to immediately suspend, restrict or revoke a CUA or deny a future CUA application.  These actions are subject to the Administrative Procedure Act, . . . and therefore the Superintendent's discretion is not unlimited.  A Superintendent's decision will be overturned by a court if it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.[[8]]

Violations for which Policy 700-001 may be invoked include:

> 1.    Failure to comply with state or federal law, regulation or administrative action where a link exists between the offense and the business activity authorized, regardless of whether the violation occurred in a unit of the National Park System;
>
> * * *
>
> 4.    Failure to comply with the provisions and conditions of the CUA, including national, regional, and park-specific conditions . . . ;

-----

[6]Exhibit 3 at 1, Motion for Temporary Restraining Order [etc.], Docket No. 17.

[7]Id.

[8]Id. at 2.

ORDER – Motion for Temporary Restraining Order                                    -3-

> 5. Failure to adequately and timely address material and documented operational concerns expressed by the National Park Service that may negatively impact visitor experience, park resources and/or staff and visitor safety.[9]

Plaintiff first applied for and was granted Air Taxi and Big Game Transport CUAs in 2014. A Big Game Transport CUA allows the holder to fly nonguided hunters in and out of a national park. An Air Taxi CUA allows the holder to fly all other categories of users in and out of a national park.

In September 2020, Knaebel was charged by the State of Alaska with "violating AS 8.54.720(a)(2) for allegedly hindering a lawful hunt outside" of the Wrangell-St. Elias National Park.[10] Knaebel is alleged to have parked his plane for two hours on a remote airstrip causing another hunter to be delayed in arriving at the airstrip.[11] Plaintiff alleges that the other hunter was still able to land the "day he expected to and could not have legally hunted that day."[12] Knaebel pled not guilty and his case has not yet gone to trial. Trial is currently set for October 25, 2021, although as plaintiff has pointed out, due to the backlog of cases due to the COVID-19 pandemic, this date is likely to change.[13]

---

[9]Id.

[10]Amended Complaint for Injunctive Relief at 4, ¶ 21, Docket No. 16.

[11]Id.

[12]Id. at ¶ 23.

[13]Plaintiff's Reply to Defendant's Opposition at 6, Docket No. 14.

ORDER – Motion for Temporary Restraining Order                                    -4-

Plaintiff filed an application for its 2021 Air Taxi and Big Game Transport CUA on January 28, 2021.[14] On May 11, 2021, Bobowski advised Knaebel that plaintiff's 2021 CUA application for Air Taxi operations had been approved, but its application for a Big Game Transport CUA had been denied.[15] Bobowski stated that, pursuant to Policy Number 700-001,

> CUAs may be suspended or restricted when the CUA holder is under investigation or is charged with a criminal offense by state or federal authorities when a link exists between the conduct underlying the offense and the business activity authorized, even when the alleged offense occurred outside NPS-managed lands. Your pending criminal charge for hindering a lawful hunt is sufficient to deny this CUA application.[16]

Bobowski further stated that Knaebel's

> pending criminal charge is consistent with numerous complaints the NPS has received about your business practices within the park. The complaints primarily involve hunting guide concessionaires, their clients and other commercial user groups. While none of these complaints have materialized into criminal charges to date, nor have they previously resulted in a denial of a permit application, collectively they represent a significant concern to the Park as you, Tok Air Service LLC, ha[ve] received more complaints in total since 2015 than any other CUA holder or concession contract at Wrangell-St. Elias National Park and Preserve. Moreover, and more importantly, your interactions with law enforcement have not been consis-

---

[14]Affidavit of Zachary Knaebel at 1, ¶ 2, Exhibit 1 at 1, Motion for Temporary Restraining Order [etc.], Docket No. 17.

[15]Exhibit 2 at 1, Motion for Temporary Restraining Order [etc.], Docket No. 17.

[16]Id.

ORDER – Motion for Temporary Restraining Order                                    -5-

tently professional as would be expected of a National Park Service CUA holder.[17]

On June 10, 2021, plaintiff filed an appeal with the regional director of the NPS regarding the denial of its Big Game Transport CUA. On June 29, 2021, Jeffrey Mow, Acting Regional Director, issued a decision on plaintiff's appeal.[18] Mow "modifi[ed] Superintendent's Bobowski's decision" and "authorize[d] issuance of a Big Game Transport CUA . . . subject to immediate suspension pending satisfaction" of a number of conditions.[19] The conditions include:

1. Satisfactory resolution of the pending criminal charge for hindering a lawful hunt[.]
2. Satisfactory resolution of the pending administrative charges with the State of Alaska, Big Game Commercial Services Board: 1. falsification of a Transporter Activity Report in 2018, . . . and 2. blocking of an airstrip in 2020 during hunting season[.]
3. Satisfactory resolution to the ongoing investigation involving a sub legal sheep[.]
4. No new criminal charges, administrative charges or investigations are initiated against Mr. Knaebel.
5. Submission of a satisfactory letter of intent from Mr. Knaebel to WRST detailing specific steps he will take to cooperate with: (1) law enforcement consistent with the Alaska Administrative Code 12 AAC 75.440 as well as expectations of professional behavior of a National Park

---

[17]Id.

[18]Id. at 3-12.

[19]Id. at 4.

ORDER – Motion for Temporary Restraining Order                    -6-

> Service CUA holder; and (2) other commercial operators,
> their clients, and visitors.[20]

Mow explained that the decision to issue a Big Game Transport CUA and then immediately suspend it was based on the following:

> (1) Mr. Knaebel has been charged with a criminal violation associated with big game transport activities under State law; (2) Mr. Knaebel committed a violation under his prior CUA by failing to operate under conditions satisfactory to the Superintendent; and (3) Mr. Knaebel committed a violation under his prior CUA by failing to adequately and timely address material and documented operational concerns expressed by NPS that may negatively impact visitor experience, park resources and/or staff and visitor safety.[21]

The decision set out, in some detail, incidents of Knaebel's alleged "unprofessional and unethical behavior toward Federal and State officials" and his "[u]nprofessional and unethical behavior toward other park users."[22] Knaebel has addressed these incidents, also in some detail, in his third affidavit.[23]

On June 11, 2021, plaintiff commenced this action by filing a complaint for injunctive relief. In its complaint, plaintiff asserted Administrative Procedure Act (APA) claims based on allegations that the May 11, 2021 denial of its Big Game Transport CUA was arbitrary and capricious, that the denial violated the Fourteenth Amendment, and that the denial

---

[20]Id. at 4-5.

[21]Id. at 4.

[22]Id. at 5-9.

[23]Exhibit 1 at 13-55, Motion for Temporary Restraining Order [etc.], Docket No. 17.

ORDER – Motion for Temporary Restraining Order                    -7-

violated Policy Number 700-001. On the same day, plaintiff filed a motion for a preliminary injunction.[24]

By order of July 7, 2021,[25] the court denied plaintiff's motion for a preliminary injunction on the grounds that the May 11, 2021 denial of plaintiff's Big Game Transport CUA was not a final agency action.[26]

On July 23, 2021, plaintiff filed an amended complaint.[27] In its amended complaint, plaintiff asserts APA claims based on allegations that the June 29, 2021 decision was arbitrary and capricious and that the June 29, 2021 decision violated the Fifth Amendment.

Plaintiff now moves for a temporary restraining order ("TRO") to be followed by a preliminary injunction upon expiration of the TRO. As Knaebel characterizes it, plaintiff seeks to have the court order "the National Park Service to unsuspend [the] Tok Air Service 2021 Big Game Transport CUA and remove conditions 1-4."[28]

## Discussion

Rule 65, Federal Rules of Civil Procedure, governs temporary restraining orders and preliminary injunctions. "Temporary restraining orders are emergency measures, intended

---

[24]Docket No. 3.

[25]Docket No. 15.

[26]Id. at 10.

[27]Docket No. 16.

[28]Third Knaebel Affidavit at 42, ¶ 92, Exhibit 1 at 54, Motion for Temporary Restraining Order [etc.], Docket No. 17.

ORDER – Motion for Temporary Restraining Order                    -8-

to preserve the status quo pending a fuller hearing on the injunctive relief requested, and the irreparable harm must therefore be clearly immediate." <u>Givens v. Newsom</u>, 459 F. Supp. 3d 1302, 1309 (E.D. Cal. 2020). "'A preliminary injunction is an extraordinary remedy never awarded as of right.'" <u>Calif. Trucking Ass'n v. Bonta</u>, 996 F.3d 644, 652 (9th Cir. 2021) (quoting <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008)).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." <u>Givens</u>, 459 F. Supp. 3d at 1039. "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" <u>Calif. Trucking Ass'n</u>, 996 F.3d at 652 (quoting <u>Winter</u>, 555 U.S. at 24).

"A [temporary restraining order] or [a] preliminary injunction can take two forms." <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 878 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" <u>Id.</u> at 878-79 (quoting <u>Chalk v. U.S. Dist. Court</u>, 840 F.2d 701, 704 (9th Cir.1988)). But, here, plaintiff seeks a mandatory injunction which "'orders a responsible party to take action.'" <u>Id.</u> at 879 (quoting <u>Meghrig v. KFC W., Inc.</u>, 516 U.S. 479, 484 (1996)). Mandatory injunctions are "'particularly disfavored.'" <u>Id.</u> (quoting <u>Anderson v. United States</u>, 612 F.2d 1112, 1114 (9th Cir.1980)). "In general, mandatory injunctions 'are not granted unless extreme or very

serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" Id. (quoting Anderson, 612 F.2d at 1115).

Defendants argue that plaintiff's request for mandatory injunctive relief in this APA case is per se improper. Plaintiff seeks to have the court order NPS "to rescind the denial/suspension of" its "CUA for 2021 and "to grant the CUA pending final order of this court."[29] But, defendants argue that the court cannot order NPS to make a specific decision as to plaintiff's Big Game Transport CUA because the issuance of a permit is a matter of agency discretion. This argument is based on "Section 701(a)(2) of the APA[, which] precludes judicial review of agency actions 'committed to agency discretion by law.'" Perez Perez v. Wolf, 943 F.3d 853, 860 (9th Cir. 2019) (quoting 5 U.S.C. § 701(a)(2)). Section "701(a)(2) applies only in the 'rare instances' where 'the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" Id. at 861 (quoting Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 688 (9th Cir. 2003)). "If there is no law to apply, there are no issues susceptible of judicial resolution, and accordingly the courts are denied jurisdiction over the matter." Ariz. Power Auth. v. Morton, 549 F.2d 1231, 1239 (9th Cir. 1977) (citation omitted).

Defendants cite to Drakes Bay Oyster Co. v. Salazar, 921 F. Supp. 972 (N.D. Cal. 2013), in support of this argument. There, the plaintiffs challenged a decision by the

---

[29]Amended Complaint for Injunctive Relief at 2, ¶ 7, Docket No. 16.

ORDER – Motion for Temporary Restraining Order                                    -10-

Secretary of Interior which "directed the National Park Service (NPS) to allow the [Company's] permit" for oyster farming "to expire at the end of its current term." Id. at 891. The "[p]laintiffs filed suit to have the Secretary's Decision not only declared 'null and void' and 'set aside,' but, among other relief, to 'Order [the] Secretary . . . to issue [the Company] a [New] SUP [special use permit],' or alternatively, 'to vacate the decision . . . with instructions to make a new decision.'" Id. at 982. The Secretary's authority to issue the special use permit in question was based on a provision, Section 124, in an appropriations bill that applied only to "Drake's Bay Oyster Company's Reservation of Use and Occupancy and associated special use permit. . . ." Id. at 977.

The defendants argued that the court lacked jurisdiction under the APA because the Secretary's action fell "within the exception set forth in 5 U.S.C. section 701(a)(2) of the APA exempting from judicial review any agency action which is 'committed to agency discretion by law[.]'" Id. at 983. The court held that the exception in Section 701(a)(2) applied. Id. at 986. The court explained that Section 701(a)(2) has been interpreted to "exclude from review 'agency actions' that fall within one of two categories, either those actions where: (i) a court has no meaningful standard against which to judge the exercise of discretion and therefore no law to apply; or (ii) the agency's action requires a complicated balancing of factors peculiarly within the agency's expertise." Id. The court found that "the record demonstrates that Congress afforded the Secretary discretion to make his Decision

without sufficient meaningful standards for the Court to review the Decision within the confines of the APA." Id. at 988. The court concluded that

> [a]s Congress envisioned, unless a court can meaningfully review the specific manner in which an agency must act, not dictating therein the conclusion the agency must reach, review under the APA is unavailable. Here, because Section 124 sought to address one specific special use permit for one specific business on a specific timeframe, the Secretary was afforded the discretion to decide whether to issue the permit and judicial review is not authorized.

Id. at 990.

But, here, although both the Superintendent and the Director are afforded discretion when deciding whether to issue a CUA, that does not make their decisions unreviewable. Meaningful standards against which to judge their exercise of discretion can be found both in 54 U.S. § 101925(b)(1) and in Policy 700-001. And in fact, Policy 700-001 expressly states that "the Superintendent's discretion is not unlimited. A Superintendent's decision will be overturned by a court if it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[30] Thus, the Section 701(a)(2) exception does not apply here.

That does not, however, necessarily mean that the court could grant plaintiff the injunctive relief it has requested. Defendants also seem to be raising an argument based on Section 705 of the APA, which provides:

---

[30]Exhibit 3 at 2, Motion for Temporary Restraining Order [etc.], Docket No. 17.

ORDER – Motion for Temporary Restraining Order                    -12-

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.

"Section 705 allows courts to grant interim relief, but only 'to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.'" Crawford-Hall v. United States, Case No. 2:17-cv-1616-SVW-AFM, 2018 WL 5816117, at *8 (C.D. Cal. May 31, 2018) (quoting 5 U.S.C. § 705). "By its very terms, Section 705 does not authorize a court to issue a preliminary injunction [or temporary restraining order] that alters the status quo or dictates specific terms and conditions to an agency." Id. Defendants argue that plaintiff is asking the court to dictate specific terms and conditions to NPS, i.e., rescind the suspension of its Big Game Transport CUA, or in other words, grant it a Big Game Transport CUA without any conditions or restrictions.

Defendants cite to Salt Pond Associates v. United States Army Corps of Engineers, 815 F. Supp. 766 (D. Del. 1993), in support of this argument. There, the plaintiff was attempting to "develop a piece of land for resale as waterfront lots[,]" which meant he had to satisfy a number of environmental wetlands requirements. Id. at 768. The defendants denied the plaintiff's application for a section 404 permit for the entirety of the development project but offered to grant the plaintiff a "conditional" permit for utility crossings (the Loop

ORDER – Motion for Temporary Restraining Order                                                    -13-

Canal permit), with one of the primary conditions being that the plaintiff fill ten ponds that had been excavated in the wetlands.  Id. at 769-70.  The plaintiff argued that the defendants were "attempting to improperly regulate the excavation of these ponds through some sort of 'back-door' approach to the permit application process" and that "any and all conditions relating to the restoration or filling of the excavated ponds are improper and that the withholding of the Loop Canal permit pending the restoration of the ponds is an improper use of the Government's authority."  Id. at 771.  The plaintiff moved for a preliminary injunction, in which it sought, among other relief "a declaration from th[e c]ourt directing the Government to issue Salt Pond the necessary Loop Canal permit. . . ."  Id.

The court observed that the plaintiff was asking the court to "direct the authorization of the utility crossings permit subject to the handful of special conditions directly relating to the Loop Canal crossing" but without any conditions related to pond restoration.  Id. at 775.  The defendants argued that Section 705 "establishes by its plain and unambiguous language that the [c]ourt is without authority to grant this kind of affirmative injunctive relief sought by the [p]laintiff (i.e., directing that the Government issue a permit imposing certain conditions)."  Id.  The court agreed, explaining that

> [w]hen viewed in its entirety, the plain language of [Section 705] reveals that the remedial powers granted to a reviewing court under this section are in fact extremely limited.  The first section of the statute broadly describes when a court is authorized to act under the section (i.e., "On such conditions as may be required and to the extent necessary to prevent irreparable injury") (emphasis added).  The second part of the statute narrowly describes the scope of relief the reviewing court is

ORDER – Motion for Temporary Restraining Order                                    -14-

authorized to grant to the petitioning party ("the reviewing court . . . may issue all necessary and appropriate process <u>to postpone the effective date of an agency action OR preserve the status or rights pending conclusion of the review proceedings</u> ") (emphasis added).  Thus, the scope of relief available to the [p]laintiff is limited to (1) a postponement of the agency action or (2) a preservation of the status or rights of the parties.  When the [c]ourt is determining interim relief, by its very terms, the statute does not confer jurisdiction onto the [c]ourt to alter the status quo nor does it allow the [c]ourt in issuing interim relief to actually dictate specific terms or conditions to a governmental agency.

<u>Id.</u> at 775-76.  The court concluded that "[i]f this [c]ourt were to order that the Government issue the Loop Canal permit without the pond restoration conditions, the [c]ourt would not be preserving the status quo <u>or</u> rights of the parties since the Loop Canal permit has never been approved.  Such action is beyond the scope of relief available to the [p]laintiff under this section."  <u>Id.</u> at 776.

There is one major distinction between this case and <u>Salt Pond</u>, namely that plaintiff has not sought relief pursuant to Section 705.  Rather, plaintiff has moved for a temporary restraining order to be followed by a preliminary injunction.  "It is well established that courts may issue preliminary injunctions" as an alternative to a stay pursuant to Section 705 "in APA challenges."[31]  <u>East Bay Sanctuary Covenant v. Trump</u>, 354 F. Supp. 3d 1094, 1120

---

[31]"An injunction and a stay have typically been understood to serve different purposes. The former is a means by which a court tells someone what to do or not to do."  <u>Nken v. Holder</u>, 556 U.S. 418, 428 (2009).  "[A] stay operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability."  <u>Id.</u>

n.20 (N.D. Cal. 2018). This is, however, a distinction without a difference. "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" Boardman v. Pacific Seafood Group, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir.2009)). "'Status quo ante litem' refers to 'the last uncontested status which preceded the pending controversy.'" Id. (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). In other words, relief pursuant to Section 705 and Rule 65 is intended to preserve the status quo.

At the time plaintiff filed its amended complaint, the status quo was that its Big Game Transport CUA had been granted but then suspended. By asking this court to unsuspend its Big Game Transport CUA, plaintiff is asking the court to change the status quo. If the court were to issue a temporary restraining order or a preliminary injunction ordering "NPS to immediately unsuspend the CUA, and remove conditions 1-4[,]"[32] it would be altering the status quo. "Where, as here, a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." Committee of Cent. American Refugees v. I.N.S., 795 F.2d 1434,

---

[32]Plaintiff's Reply to Opposition to Motion for Temporary Restraining Order at 1, Docket No. 23.

1441 (9th Cir. 1986) (quoting Martin v. Int'l Olympic Committee, 740 F.2d 670, 675 (9th Cir.1984)).

Here, the facts and the law do not clearly favor plaintiff.  Plaintiff argues that it is entitled to preliminary injunctive relief because the June 29, 2021 "decision is arbitrary, capricious or an abuse of discretion, and will cause irreparable harm to [its] business reputation. . . ."[33]  This argument fails on both prongs.

The first prong is basically an argument that plaintiff is likely to succeed on the merits of his APA claims.  But, plaintiff is not likely to succeed on the merits of any of his APA claims.

As to the general argument that the June 29, 2021 decision was arbitrary and capricious, the fact that criminal charges against Knaebel remained pending was probably a sufficient basis for the director to grant but suspend plaintiff's Big Game Transport CUA. Policy 700-001 provides that a

> CUA may . . . be suspended or restricted when the Holder/Owner or Employee is under investigation or is charged for a criminal offense by state or federal authorities if a link exists between the conduct underlying the offense and the business activity authorized, regardless of whether the offense occurred in a unit of the National Park System.[34]

The criminal charges against Knaebel are based on allegations that in the course of flying an unguided hunter, he landed at a remote airstrip, which interfered with another hunter.

---

[33]Id. (emphasis omitted).

[34]Exhibit 3 at 3, Motion for Temporary Restraining Order [etc.], Docket No. 17.

ORDER – Motion for Temporary Restraining Order                                    -17-

Plainly, there is the requisite link between the conduct underlying the criminal charges against Knaebel on the one hand and plaintiff's Big Game Transport air taxi operations on the other to justify a suspension of plaintiff's Big Game Transport CUA.[35]  And, as Policy 700-001 provides, it does not matter that the criminal charges against Knaebel stemmed from conduct in his air taxi operations which took place outside the WRST.[36]  In short, the June 29, 2021 decision is a reasoned decision based upon facts recited in the decision, supported by the partial administrative record now before the court.

To the extent that plaintiff is claiming that Policy No. 700-001 was subject to notice and comment rulemaking, that claim is likely to fail.  "The APA requires a notice and comment procedure for agency 'rule making.'"  Gill v. United States Dep't of Justice, 913 F.3d 1179, 1185 (9th Cir. 2019) (quoting 5 U.S.C. § 553).  "However, 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice' are exempt from the notice and comment requirement."  Id. at 1186 (quoting 5 U.S.C. § 553(b)(3)(A)).  Policy No. 700-001 appears to be a valid, general statement of NPS policy for the exercise of Superintendent Bobowski and Director Mow's discretion in acting on CUA applications.

_____

[35]In addition, complaints lodged with the Park Service by users of WRST dealing with unsatisfactory interactions between Knaebel and others concerning the operations of plaintiff's air taxi service as a Big Game Transport CUA permittee also support the June 29, 2021, decision.

[36]See Exhibit 3 at 2 (Violation #1), Motion for Temporary Restraining Order [etc.], Docket No. 17.

ORDER – Motion for Temporary Restraining Order                                   -18-

Plaintiff is also not likely to succeed on the merits of his equal protection APA claim. The court perceives no possible equal protection problem with granting plaintiff a CUA for air taxi operations within the WRST while, at the same time granting and then suspending its CUA for Big Game Transport. The court also does not perceive an equal protection problem with suspending plaintiff's Big Game Transport CUA for WRST but not suspending plaintiff's Big Game Transport CUA for Yukon Charley. "[A] federal policy survives an equal protection challenge 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" United States v. Ayala-Bello, 995 F.3d 710, 715 (9th Cir. 2021) (quoting Heller v. Doe by Doe, 509 U.S. 312, 320 (1993)). NPS appears to have had a rational basis for the distinction it made between plaintiff's Big Game Transport CUA and its Air Taxi CUA, namely that Knaebel's criminal charge was related to transporting hunters, not other Park users. As for the decision to not suspend plaintiff's Big Game Transport CUA for Yukon Charley, Mow explained that this was based on the fact that "Mr. Knaebel has a significantly cleaner record operating in YUCH than he does in WRST."[37] This appears to be a rational basis for the difference in treatment as to plaintiff's two Big Game Transport CUAs.

Finally, plaintiff has also not shown that it will suffer irreparable harm in the form of harm to its reputation. "Irreparable harm encompasses harm to a company's goodwill,

_____

[37]June 29, 2021 Decision at 10, Exhibit 2 at 12, Motion for Temporary Restraining Order [etc.], Docket No. 17.

ORDER – Motion for Temporary Restraining Order                                          -19-

reputation, loss of client relationships, and financial damage." Pacific Kidney & Hypertension, LLC v. Kassakian, 156 F. Supp. 3d 1219, 1228 (D. Or. 2016) (quotation marks omitted). Knaebel avers that the denial of plaintiff's Big Game Transport CUA will result in irreparable harm to his "reputation . . . as a safe and reliable pilot and an outstanding business owner with high customer satisfaction. . . ."[38] However, plaintiff has not "presented [any] evidence[,]" other than Knaebel's affidavit, that it will likely suffer harm to its goodwill or reputation in the absence of temporary injunctive relief." Id. Plaintiff offers letters[39] from some of its clients who have booked air taxi services for the 2021 hunting season, but none of the clients state that they will not use plaintiff's services in the future if their trips for 2021 have to be cancelled. Thus, the alleged harm to plaintiff's business reputation may not be irreparable.

There is also some suggestion in plaintiff's briefing that it is relying on harm to the 31 hunters who have booked services with plaintiff. Plaintiff states that if it is not granted a Big Game Transport CUA, "these 31 hunters will be deprived of their ability to hunt and feed their families wild foods."[40] However, "[p]laintiff provides no authority under which the [c]ourt may consider irreparable harm to third parties in lieu of or in addition to

---

[38]Knaebel Affidavit at 1, ¶ 3, Exhibit 1 at 1, Motion for Temporary Restraining Order [etc.], Docket No. 17.

[39]Exhibit 1, Plaintiff's Reply to Opposition to Motion for Temporary Restraining Order, Docket No. 23.

[40]Motion for Temporary Restraining Order at 9, Docket No. 17.

ORDER – Motion for Temporary Restraining Order                    -20-

irreparable harm to [p]laintiff." <u>Nutrition Distribution, LLC v. Enhanced Athlete, Inc.</u>, Case No. 2:17-cv-2069-JAM-CKD, 2017 WL 5467252, at *2 (E.D. Cal. Nov. 14, 2017).

<u>Conclusion</u>

Plaintiff's motion for a temporary restraining order to be followed by a preliminary injunction is denied.

The court is amenable to deciding this case on the merits on an expedited briefing schedule and extant administrative record if the parties would so agree.

DATED at Anchorage, Alaska, this 30th day of July, 2021.

/s/ H. Russel Holland
United States District Judge